UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDUARDO GONZALEZ-VALENZUELA,
Petitioner,

v.

JULIO HERNANDEZ, Acting Field Office Director, Seattle Field Office, U.S. Immigration and Customs Enforcement, et al.,
Respondents.

CASE NO. 2:26-cv-03070-TL

ORDER ON PETITIONER FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Eduardo Gonzalez-Valenzuela's Petition for Writ of Habeas Corpus. Dkt. No. 1. Respondents are Julio Hernandez, Acting Seattle Field Office Director, U.S. Immigration and Customs Enforcement ("ICE"); the Facility Administrator, Northwest ICE Processing Center ("NWIPC")[1]; David Venturella, Acting

[1] The Court construes this as a reference to Bruce Scott, Warden of the NWIPC, who has not appeared in this case. *See* Dkt. No. 5 (Notice of Appearance) at 1 n.1. As used in this Order, "Respondents" does not include Respondent Scott.

Director, ICE; Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General of the United States. Dkt. No. 1 at 9; Dkt. No. 5 (Notice of Appearance) at 1 n.1 (substituting Respondent Hernandez for Respondent Cammilla Wamsley pursuant to Federal Rule of Civil Procedure 25(d)). Having reviewed the petition, Respondents' Return (Dkt. No. 8), Petitioner's Traverse (Dkt. No. 13), and the relevant record, the Court DENIES the petition.

## I. Background

Petitioner is a citizen of Mexico who was admitted to the United States as a Lawful Permanent Resident in 1994. Dkt. No. 10-5 (DHS Notice to Appear) at 2.[2] Petitioner was six years old at the time of his admission. Dkt. No. 1 at 10.

On January 24, 2025, Petitioner pleaded guilty to federal charges of Transportation of Illegal Aliens for Profit and Possession of a Firearm by a Prohibited Person. *See* Dkt. No. 10-1 (Judgment in Criminal Case) at 2. Petitioner was sentenced to 15 months' imprisonment. Dkt. No. 10-4 (DHS Form I-213) at 3. On May 8, 2026, he was released from Bureau of Prisons custody and placed into ICE custody. *Id.* After an interview with Petitioner on the same day regarding his immigration history, ICE served Petitioner with a Notice to Appear, charging him as removable under the Immigration and Nationality Act ("INA") § 237(a)(2)(A) due to his criminal convictions. Dkt. No. 10-5 at 2, 5.

On June 23, 2026, Petitioner was ordered removed by an Immigration Judge ("IJ"). *See* Dkt. No. 10-7 (Removal Order) at 2–3. On June 29, 2026, the same IJ denied Petitioner's request for release on bond with no written explanation. Dkt. No. 10-6 (Custody Order of the IJ) at 2.

---

[2] Many of the facts recounted here are based on hearsay included in narrative portions of documents from Petitioner's immigration record. The Court makes no findings as to whether these are true and correct statements of fact, but notes that they appear to be uncontested by the Parties.

Petitioner is currently detained at Northwest ICE Processing Center ("NWIPC"). Dkt. No. 1 at 1. On July 12, 2026, Petitioner timely appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"). *See* Dkt. No. 2-1 (Notice of Appeal) at 37. On August 28, 2026, Petitioner, proceeding pro se, filed the instant habeas petition under 28 U.S.C. § 2241, seeking immediate release from custody or an individualized bond hearing. *See* Dkt. No. 1 at 23. The petition is now ripe for the Court's review.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.2d 628, 638 (9th Cir. 2004)—that is, they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 § U.S.C. 2241(c).

## III. Discussion

Petitioner raises two colorable challenges to his continued civil detention.[3] First, Petitioner asserts that his detention without an individualized bond hearing has become unreasonably prolonged in violation of the Fifth Amendment's Due Process Clause. Dkt. No. 1 at 17–18 (citing U.S. Const. amend. V). Second, Petitioner asserts that he is entitled to a determination of whether he is subject to mandatory detention under 8 U.S.C. § 1226(c). Dkt.

[3] Along with the two grounds for relief addressed by the Court, Petitioner also raises the claims that "The denial of a reasonable opportunity to obtain counsel bears directly on the fairness of the process underlying petitioner's continued detention" and "Petitioner's demonstrated compliance with prior supervision and the hardship of continued detention on his family weigh decisively in favor of an individualized bond hearing." Dkt. No. 1 at 21–22. But even if Petitioner did not have an adequate opportunity to obtain counsel for his removal proceedings, that reflects on the fairness of his removal proceedings themselves—not the lawfulness of his detention during those proceedings. Additionally, the fact that Petitioner's detention entails hardship is already recognized in the fifth factor of *Martinez*. Therefore, neither of these arguments provide an independent basis for habeas relief, and the Court does not address them further.

No. 1 at 20. The Court begins with the second challenge and determines the statutory authority for Petitioner's detention, and then addresses Petitioner's constitutional argument.

**A. Statutory Authority for Petitioner's Detention**

In their return memorandum, Respondents contend that Petitioner is detained under 8 U.S.C. § 1226(c). Dkt. No. 8 at 7. Petitioner states his intent "to contest that classification in a hearing" but does not provide arguments for why section 1226(c) is inapt. *See* Dkt. No. 1 at 20.[4]

The Court agrees with Respondents that Section 1226(c) governs Petitioner's detention, and its mandatory detention requirement applies. Under the INA, detention of noncitizens described in Section 1226(c)(1) is mandatory throughout the duration of removal proceedings, except in narrow circumstances not applicable here. *See* 8 U.S.C. § 1226(c)(4); *see also Demore v. Kim,* 538 U.S. 510, 513 (2003) (holding that Congress may constitutionally authorize mandatory detention of noncitizens under Section 1226(c) "for the brief period necessary for their removal proceedings"); *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (holding that the INA contains no implicit limitation on the length of mandatory detention without a hearing). Here, Petitioner's removal proceedings are based on his convictions for Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), and Transporting Illegal Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). *See* Dkt. No. 2-1 at 22. Because both convictions are defined as aggravated felonies (under 8 U.S.C. § 1101(a)(43)(E)(ii) and (N), respectively), Petitioner is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii). The firearm conviction also makes Petitioner deportable under Section 1227(a)(2)(C). For both reasons, Section 1226(c) applies, including its mandatory detention provision. *See* 8 U.S.C. § 1226(c)(1)(B).

---

[4] In his traverse, Petitioner does contend that since the IJ did not check off any box justifying his detention under a particular statute, that therefore the Government's position is inconsistent. *See* Dkt. No. 14 at 2. Yet, Petitioner's NTA does provide that he is detained under Section 1226(c). Dkt. No. 10-5 at 5.

**B. Whether Petitioner's Prolonged Detention Violates Due Process**

Although the INA provides that Petitioner must be detained under 8 U.S.C. § 1226(c), this does not end the Court's inquiry. On remand from the Supreme Court's decision in *Jennings*, the Ninth Circuit expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so," and has directed district courts to determine "the minimum requirements of due process" for noncitizens subject to mandatory detention under the INA. *Rodriguez v. Marin*, 909 F.3d 252, 255, 256 (9th Cir. 2018) (citation modified). In the wake of *Jennings*, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified). This District is no exception. *See Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases). Therefore, the Court now reviews whether the duration of Petitioner's detention without an individualized determination of whether he is a flight risk or a danger violates his due process rights under the Fifth Amendment to the United States Constitution.

The prolonged-detention analysis courts in this District apply to detention under 8 U.S.C. § 1226(c) is the "*Martinez* test" adopted in *Martinez v. Clark*, No. C18-1669, 2019 WL 5968089 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov 13, 2019). Under the *Martinez* test, courts consider:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made [the petitioner] removable; (4) the nature of the crimes the petitioner committed;

> (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

2019 WL 5968089, at *9. If the *Martinez* factors weigh in the petitioner's favor, the district court will find a due process violation, grant the habeas petition, and order the respondents to provide the petitioner with an individualized bond hearing that satisfies procedural due process and the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (requiring government to justify continued detention with clear and convincing evidence that Petitioner is a flight risk or danger to the community). The Court finds that application of *Martinez* is appropriate here and considers its factors in turn.

**1. Total Length of Detention**

The length of detention is "the most important factor[.]" *Martinez*, 2019 WL 5968089, at *9. "Under this factor, the longer mandatory detention continues under 8 U.S.C. § 1226(c) beyond the brief period authorized in *Demore*, the harder it becomes to justify without conducting an individualized bond hearing." *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025). "Detention that has lasted longer than six months is more likely to be unreasonable, and thus contrary to due process, than detention of less than six months." *Id.* (citation modified) (quoting *Sajous v. Decker*, No. C18-2447, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)).

Petitioner has been detained for slightly less than six months. *See* Dkt. No. 1 at 2 (noting Petitioner's transfer to ICE custody on May 8, 2026). This approximates the period found to be reasonable in *Demore*. *See* 538 U.S. at 530 (finding up to sixth months' immigration detention to be "a constitutionally permissible part of [the removal] process"). Therefore, the first factor favors denying a bond hearing.

**2. Likely duration of future detention**

As the second factor, the Court considers "the anticipated duration of all removal proceedings including administrative and judicial appeals" during which Petitioner will be detained. *Martinez*, 2019 WL 5968089, at *9. Respondents contend that it is "speculative as to how long or what type of additional administrative or judicial processes will be required" and therefore this factor is "at worst, neutral." Dkt. No. 8 at 10. Petitioner claims that this factor warrants a bond hearing, since "his BIA appeal remains pending, and Respondents' Return does not identify any expected date of resolution." Dkt. No. 13 at 4.

True, any prediction requires some speculation. But Respondents offer no reason why this Court is not permitted to speculate. Even after Petitioner's appeal is fully briefed, the remaining process may well take years when factoring the time required for the BIA to render its decision, for any necessary remand to the immigration court, and for Petitioner to exhaust his judicial appeals. *See Ferril v. Scott*, No. C26-3161, 2026 WL 3015397, at *2 (W.D. Wash. Oct. 7, 2026); *see also Juarez v. Wolf*, No. C20-1660, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2021) (estimating two years or more remaining at the start of a Ninth Circuit appeal), *report and recommendation adopted*, 2021 WL 2322823 (June 7, 2021). This factor thus favors requiring a bond hearing.

**3. Criminal History**

Under the third factor, the Court reviews the length of civil detention compared to the petitioner's criminal sentence. *Martinez*, 2019 WL 5968089, at *9 (W.D. Wash. May 23, 2019). And under the fourth factor, the Court considers the nature of the crime. *Id.* These factors "are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile." *Juarez*, 2021 WL 2323436, at *5.

Petitioner was sentenced to 15 months of incarceration for Transporting Illegal Aliens for Profit and Unlawful Possession of a Firearm. Dkt. No. 10-1 at 2. Petitioner ultimately served about 11 months before he was transferred to immigration detention. Dkt. No. 10-4 at 3. Therefore, as his criminal sentence is about twice as long as his current length of detention, the third *Martinez* factor favors denying a bond hearing.

As to the fourth factor, Respondents argue that Petitioner was convicted of "very serious immigration crimes" as well as possession of a firearm by a prohibited person. Dkt. No. 8 at 10. Since Petitioner pleaded guilty to a firearms offense—which is sufficiently serious to subject him to mandatory detention under 8 U.S.C. § 1226(c)— and offers no argument on this factor as related to the relevant convictions (*see generally* Dkt. No. 13), the Court agrees with Respondents that this factor favors denying a bond hearing.

**4. Conditions of Detention**

The Court next "considers the conditions of the detention facility where the petitioner is detained." *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that [they are] entitled to a bond hearing." *Id.* Petitioner is detained at NWIPC. Dkt. No. 1 at 1. Respondents claim this factor is "neutral" as there is "no evidence in the record that his conditions are meaningfully different from those faced by other civil immigration detainees[.]" Dkt. No. 8 at 10. The Court cannot put its head in the sand as courts in this district have repeatedly recognized characterized the conditions in NWIPC as that of a prison, including problems with food, medical neglect, and cleanliness." *Shevchuk v. Scott*, No. C26-1408, 2026 WL 1413609, at *2 (W.D. Wash. May 20, 2026); *see also Hossain v. Scott*, No. C26-923, 2026 WL 1533003, at *6 (W.D. Wash. June 1, 2026) (collecting cases on NWIPC conditions).

However, as Petitioner did not raise this issue, the Court will find this factor neutral.

**5. Delays in Removal Proceedings**

Under the sixth and seventh *Martinez* factors, the Court considers delays in the removal proceedings caused by the detainee or the government, respectively. 2019 WL 5968089, at *10. A "[p]etitioner is entitled to raise legitimate defenses to removal," and exercising one's legal avenues to challenge to removal "cannot undermine [a] claim that detention has become unreasonable." *Juarez*, 2021 WL 2323436, at *6 (citation modified).

Here, neither Petitioner nor Respondents contend there is any delay attributable to either Party. *See* Dkt. No. 8 at 11; Dkt. No. 13 at 4. Given this, these two factors are neutral.

**6. Likelihood that Removal Proceedings Result in Final Order of Removal**

Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *See Martinez*, 2019 WL 5968089, at *10. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Id.* "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* Here, Petitioner has been a permanent resident for 32 years who strenuously denies he is removable, has appealed the IJ's decision to the Board of Immigration Appeals (BIA), and contends that his BIA appeal "raises a substantial, good-faith question as to whether those charges are legally sustainable." Dkt. No. 1 at 16. Petitioner does not provide details on what these "substantial, good-faith question[s]" are, or why his removal proceedings are unlikely to result in a final order of removal. *Id.* Still, given that he is contesting the removal proceeding, "this Court is unwilling to conclude, based on the record before it, that the appeal is frivolous or that Petitioner will not ultimately prevail." *Batista v. United States*, No. C26-2695, 2026 WL 3026202, at *6 (W.D. Wash. Oct. 2, 2026) (quoting *Juarez*, 2021 WL 2323436, at *7). Thus, this factor is neutral.

* * *

In sum, out of the eight *Martinez* factors, three (including the most important factor) weigh against granting Petitioner a bond hearing, four are neutral, and one weighs in favor of requiring a bond hearing. Given the weight and number of the factors weighing against granting a bond hearing, the Court finds that Petitioner's current detention without a bond hearing is not unreasonably prolonged.

## IV. CONCLUSION

According, the Petition for a Writ of Habeas Corpus (Dkt. No. 1) is DENIED.

Dated this 29th day of October, 2026.

Tana Lin
United States District Judge